UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE RAMOS,
    *Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
    *Defendants.*

No. 3:18-cv-1459 (VAB)

**ORDER OF DISMISSAL**

Jose Ramos, proceeding pro se and currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has sued Department of Correction ("DOC") Commissioner Scott Semple, Warden William Mulligan, and Correction Officer John Doe {collectively "Defendants") in their official and individual capacities for damages and declaratory relief under 42 U.S.C. § 1983 against. Complaint, ECF No. 1 ("Compl.").

Mr. Ramos is suing the Defendants for allegedly retaliating against him and deprivation of due process by stealing items from his cell at MacDougall-Walker Correctional Institution. *Id.*

On September 10, 2018, Magistrate Judge William I. Garfinkel granted Mr. Ramos's motion to proceed *in forma pauperis*. *See* Order, ECF No. 9.

For the following reasons, the Court **DISMISSES t**he Complaint for failure to state a plausible claim under 28 U.S.C. § 1915A.

Mr. Ramos will have until August 2, 2019 to seek leave to amend his Complaint or the Court will direct the Clerk of the Court to close this case.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    Factual Allegations**

On June 8, 2018, correction officers allegedly entered the H-1 Unit of MacDougall-

1

Walker Correctional Institution, removed all inmates in that unit from their cells and sent them to the gym while they performed a "shakedown" of the cells. Compl. at ¶ 1. During the shakedown, Mr. Ramos alleges that officers stole items his cell, including an extension cord and towel. *Id.* at ¶ 2.

Later that day, Mr. Ramos spoke with Officer Perry and wrote to Captain Black about his missing property, but neither official provided him with any information. *Id.* at ¶ 3.

On July 16, 2018, Mr. Ramos wrote to William Mulligan and Commissioner Semple about the issue. *Id.* at ¶ 4.

On August 14, 2018, Mr. Mulligan replied to Mr. Ramos's letter and said that there was no shakedown of Mr. Ramos's cell on June 8 and that Ramos's property matrix did not show that he had an extension cord or towel in his cell. *Id.* at ¶ 5; Letter from Mulligan, Pl.'s Ex. 1, ECF No. 1, at 8. Mr. Mulligan also informed Mr. Ramos that future claims regarding lost property need to be addressed through the proper chain of command. *Id.*

Mr. Ramos alleges that he asked that officers preserve camera footage of his housing unit to prove that there was a shakedown and that officers stole his property. Compl. at ¶ 7

**B.     Procedural History**

On August 28, 29018, Mr. Ramos filed a Complaint. Compl.

That same day, Mr. Ramos moved for leave to proceed *in forma pauperis*. Motion for Leave to Proceed in forma pauperis, ECF No. 2.

On August 30, 2018, the Court referred this case to U.S. Magistrate Judge William I. Garfinkel. Order Referring Case, ECF No. 6.

On August 31, 2018, a notice was issued to Mr. Ramos regarding insufficiency of his petition. Notice to Petitioner, ECF No. 7

On August 5, 2018, Mr. Ramos again moved for leave to proceed *in forma pauperis*, Motion for Leave to Proceed in forma pauperis, ECF No. 8.

On September 10, 2018, Magistrate Judge Garfinkel granted Mr. Ramos's first motion to proceed *in forma pauperis*. Order, ECF No. 9.

## II.     STANDARD OF REVIEW

This Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is also well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## III.    DISCUSSION

Mr. Ramos alleges First Amendment retaliation claims against Defendants Mulligan and Semple because he previously filed a lawsuit against them for stealing his property. Compl.

3

at ¶ 9. He also claims that the taking of his property violated his Fifth and Fourteenth Amendment due process rights. *Id.* at ¶ 10. For the constitutional violations, he seeks damages and declaratory relief against both defendants in their individual and official capacities.

For the reasons discussed below, Mr. Ramos's claims must be dismissed.

### A.   First Amendment Retaliation

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-cv-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012). "To prevail on a First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

"In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, 08-CIV- 941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse).

To allege causation, the prisoner must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). Some of the facts often used to determine retaliatory motive include (1) temporal proximity between the protected conduct and the alleged retaliatory

4

act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation. *Id.*; *O'Diah*, 2013 WL 1914434, at *10.

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

Here, Mr. Ramos's retaliation claim is factually unsupported. He concludes—without supplying any factual support—that (1) Defendants Mulligan and/or Semple were personally involved[1] in the shakedown of his cell and theft of his property; and (2) did so out of retaliation for the earlier lawsuit filed against them. There are, however, no facts showing that either

---

[1] "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501.The only fact in the Complaint showing any personal involvement of the defendants is the letter Mulligan wrote to Mr. Ramos two months after the incident indicating that no shakedown or confiscation of property occurred in Mr. Ramos cell. Accordingly, there is no viable claim for monetary damages under *respondeat superior*.

defendant even knew about the shakedown or the stolen property until more than one month after the events occurred, nor are there any facts showing that such events were causally connected to the earlier lawsuit. Mr. Ramos's retaliation claim therefore is entirely conclusory and cannot proceed.

Accordingly, the Court dismisses Mr. Ramos's First Amendment retaliation claim.

### B. Fifth Amendment Due Process

Mr. Ramos next claims that the taking of his property from his cell on June 8, 2018 violated his Fifth Amendment right to due process. *See* Compl. at ¶ 10. The Fifth Amendment, however, only applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Because Plaintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment."). Mr. Ramos therefore has not alleged that a federal official violated his Fifth Amendment rights; nor has he otherwise alleged facts to state a claim under the Fifth Amendment.

Accordingly, the Court dismisses his Fifth Amendment due process claim.

### C. Fourteenth Amendment Due Process

To the extent Mr. Ramos attempts to state a due process claim under the Fourteenth Amendment, his claim fails on the merits. The Supreme Court has held that the Fourteenth Amendment Due Process Clause is not violated when an inmate loses personal belongings due to

the negligent or intentional actions of correction officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).

Here, the Connecticut provides an adequate remedy for the deprivation that Mr. Ramos alleges through the DOC Administrative Directives and the Connecticut General Statutes. DOC Administrative Directive 9.6(16) provides that the DOC's "Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not exceeding . . . ($3,500.00) for lost or damaged personal property" and that an inmate may pursue his property claim with the state Claims Commissioner if the Board denies the claim completely or in part. Connecticut statue provides prisoners can present claims for a lost property refund to the Connecticut Claims Commission. Conn. Gen. Stat. § 4-141 *et seq*.

Mr. Ramos has not alleged whether he has used this remedy to litigate his claim for lost property and therefore cannot allege that the state remedy is inadequate. *See Edwards v. Erfe*, 588 F. App'x 79, 80–81 (2d Cir. 2015) (affirming dismissal of deprivation of property claim because inmate had not alleged that state remedy process was inadequate); *S. v. Webb*, 602 F. Supp. 2d 374, 386 (D. Conn. 2009) (finding that Connecticut has sufficient post-deprivation remedies for seizures of property by state officials).

The fact that Mr. Ramos may anticipate a more favorable outcome by litigating his claim in federal court does not render the state's remedy inadequate. *See Hudson*, 468 U.S. at 535 ("In sum, it is evident here . . . that the State has provided an adequate postdeprivation remedy for the alleged destruction of property."). Without showing that the state's post-deprivation remedy is inadequate to litigate his lost property claim, Mr. Ramos cannot proceed with this action under 42 U.S.C. § 1983.

Accordingly, the Court dismisses Mr. Ramos's Fourteenth Amendment due process claim.

D.     **Claims Against John Doe**

Mr. Ramos also lists Correction Officer John Doe as a third defendant in this case but alleges no facts against him in the Complaint. Thus, even if he had stated a plausible claim for relief, there are no facts showing Doe's personal involvement in the alleged constitutional violations.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** the Complaint for failure to state a plausible claim under 28 U.S.C. § 1915A.

Mr. Ramos has until August 2, 2019 to seek leave to amend his Complaint or the Court will direct the clerk of the Court to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of June 2019.

 /s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE